LAW SCHOOL LIBRARY

## MUNICIPALITY No. THREE v. ANTOINE MICHOUD.

The 118th art. of the Constitution should not be interpreted in a strict or technical sense. It is sufficient, that the object of the law be stated in its title, according to the understanding of reasonable men. Where some of the provisions of a law fall under the constitutional prohibition, this does not annul the whole act, but only such portions as are not embraced in the title.

Under the act of May 4th, 1847, the city councils had the power of taxing rural property within the limits of the city, in the same manner that urban property is taxed; but a dis-tinction between rural and urban property was made by the act of March 18th, 1850.

The remission of a tax, by the city councils, is an extinguishment of the obligation; and the tax cannot be re-imposed.

The power to lay and collect taxes has ever been understood to operate prospectively, and never retrospectively.

Laws prescribe for the future. They can have no retrospective operation. C. C. 8.

6 605
46 452
---
6 605
48 1095
49 1532
49 1537
---
6 605
51 1340
51 1966

APPEAL from the Fifth District Court of New Orleans, *Buchanan*, J. *J. S. Whitaker*, for plaintiffs. *Lewis* and *Bermudez*, for defendant. The judgment of the court (*Slidell*, J., dissenting,) was pronounced by

ROST, J. In the case of the plaintiffs against the *Ursuline Nuns*, 2d Ann. 611, we refused to give judgment against the defendants, for a tax on real pro-perty not laid out into streets, which had been assessed at the same rate as

the tax on the other real property of the municipality; but we reserved the rights of the corporation to recover the tax, upon previously making a deduction on the assessment, as contemplated by the proviso of the 6th section of the act of 1805, incorporating the city of New Orleans.

The plaintiffs have since passed ordinances making that deduction; and they now claim from the defendant the reduced taxes on his property not laid out into streets, for the years 1843 and 1844, and also the full tax for the year 1848, under the provisions of the act "to provide for the payment of the debts of the municipalities of New Orleans, approved on the 4th of May, 1847."

The defence is, that the property taxed is situated out of the incorporated limits of the municipality; that, by law, the city of New Orleans, or either municipality, has not the right to levy taxes on property situated within its limits, until the city council shall extend to the property taxed equal support and privileges with the city and incorporated faubourgs, agreeably to the tax imposed; that the property taxed has never enjoyed the privileges and immunities granted to the properties situated in other parts of the municipality; that the defendant has always made his own roads, has no guards, nor light, nor anything else, from the corporation, to establish the equivalent of the amount of taxes claimed from him.

The case is before us on the appeal taken by the defendant, from a judgment in favor of the plaintiffs. The defendant's counsel admit, that the issue is substantially the same as was made in the case of the *Ursuline Nuns.* But they ask us to review that decision; and the grounds upon which its correctness is assailed by them, have been argued with marked ability. We are not prepared to admit the alleged injustice of the tax, as it bears upon the defendant and others in his situation; and if we were, this is not a matter upon which we can act. We must, within certain limits, apply the law as we find it written, and be guided exclusively by the established rules of interpretation, which can alone give it certainty. Fixed and precise rules, unbending alike for the rich and the poor, though they may, in rare instances, be productive of hard cases, are better than an arbitrary interpretation, which would leave the rights of litigants to the discretion and conscience of the judge.

The sixth section of the act of 1805 provides, that lands within the limits of the city, not laid out into streets, shall not be taxed for the maintenance of lights, of the city watch, and for watering and cleaning the streets. With those exceptions, there is no reservation on the power of the city government, under that section, to tax that property in common with all other within the limits of the city.

The only acts of the Legislature which have restrained, or in any manner affected, the power of taxation given to the city government, by the act of 1805, are the act of 1813, the act of 1830, and the act of 1834. The act of 1813 is in these words: " That so much of the sixth section of the act incorporating the city of New Orleans, passed in 1805, as gives the city council power to lay tax for the use of the city on the suburbs which are laid out into streets, outside of the city and incorporated suburbs, shall be, and is hereby, repealed, with all acts having reference thereto, until the city council shall extend the aforesaid suburbs equal support and privileges with the city and incorporated suburbs, agreeable to the tax that may be laid on such suburbs, by the city council." It applies exclusively to property laid out into streets, and does not touch the power of the corporation to tax rural property.

The act of 1830 defines unincorporated faubourgs to be, those which pay no tax to the city, inasmuch as they do not enjoy the same advantages as the other

parts of said city. It clearly refers to the faubourgs dispensed from paying taxes, by the act of 1813, and the definition it gives, cannot, upon any sound rule of construction, be applied to any others.

The act of 1834 is entitled, "an act to explain the extent of the powers, vested by law in the mayor and city council of the city of New Orleans, and for other purposes." The preamble of the act shows, that the main object of the Legislature in passing it was, to determine whether the corporate powers of the city government were to be extended to the unincorporated faubourgs, and other parts of the banlieue of the city, in the same manner as in the city proper and its incorporated faubourgs.

The first, second, fourth and fifth sections of the act have alone reference to taxation. The first section authorizes a tax on carts, drays and carriages, over the entire limits of the corporation. The second section provides, that a certain class of carts, drays and carriages, which are not kept for hire, shall also be subject to taxation within the same limits. The fourth section authorizes the mayor and city council to appoint assessors of taxes. The fifth section defines the duties of the assessors, and authorizes the corporation to bring suit against all who are in default, to pay their taxes, together with eight per cent interest from the day on which they ought to have been paid. It also specifies how the corporation shall proceed against non-residents, and ends by this proviso : "Provided also, however, that nothing contained in this section shall be so interpreted, as to give the right to the mayor and city council to tax any property not within the incorporated limits of the city." This proviso is the only portion of the act that has any reference to the subject matter of this controversy, and the question is, whether it has repealed the limited power to tax rural property, given by the sixth section of the act of 1805.

It is conceded, that the law does not favor repeals by implication; the legal presumption being, that the Legislature, when it entertains an intention, will express it in clear and explicit terms. But, it is urged, that the intention to repeal is to be inferred from the spirit and intent of the act of 1834, and the object which the Legislature had in passing it; that in 1832, the Supreme Court had determined, in the case of *Laferranderie* v. *Mayor et al.*, that the corporation had not the power to lay taxes on lands outside of the limits of the city and the incorporated faubourgs, (3 L. R. 246,) and that, under that decision, the Legislature, in passing the act of 1834, took it for granted, that the power to tax rural estate within the incorporated limits of the city, did not previously exist. This may be as stated by counsel; but we are unable to perceive how it can assist the defendant's cause. If it be an admissible presumption, that the lawmaker does not at all times know the state of the law, and that, in this case, the Legislature was not aware that, under the sixth section of the act of 1805, the power existed, it is clear that they could not have intended to repeal it. The wording of the proviso of the act of 1834, is not, in our opinion, sufficiently comprehensive to authorize a repeal of former laws, by implication, in any case; and if, as alleged, it was adopted under the influence of an error of law, we could not, *a fortiori*, give it effect as a repealing clause, because we have no means of ascertaining that the action of the Legislature would have been the same, if they had been apprized that the power to tax rural estate was given to the city by the original act of incorporation, and had never been taken away.

It was urged, on the argument of the case, that the act of 1847, under which the tax of 1848 is claimed, is void, being passed in violation of art. 118 of the

MUNICIPALITY
No. THREE
*v.*
MICHOUD.

Constitution of the State, in this, that it embraces more than one object, and all the objects embraced therein are not expressed in the title.

The title of the act is, " an act to provide for the payment of the debts of the municipalities of New Orleans." The first section provides, that the taxation within each municipality shall be equal and uniform; that property shall be taxed in proportion to its value, and that no one species of property shall be taxed higher than another of equal value. The second section prohibits the emission by the municipalities of bills of credit, promissory notes, or paper currency of any description; and the creation of any debt beyond their revenues. It also prohibits the appropriation of monies to any other than municipal purposes, the subscribing for stock of corporations, and the borrowing of money to an amount exceeding one hundred thousand dollars. The eighth section authorizes the mayor and commissioners of the general sinking fund to sell certain property. The thirteenth section requires the State Treasurer to enforce a strict compliance with a law passed in 1839.

It is urged, that these provisions embrace several different and distinct objects, and render the act in which they are found, unconstitutional and void *in toto*. In the case of the *State* v. *Hackett*, 5th Ann. 91, we had occasion to say, that the title of a law, under the 118th art. of the Constitution, should not be interpreted in a strict or technical sense; and that it was sufficient, that the object of the law be stated in its title, according to the understanding of reasonable men. We stated, that if the title of the act, in that case, had been generally for the arrest and custody of runaway slaves, we would have considered it sufficient; but that, under a title to regulate and define fees, the new provisions, made for the arrest and custody of runaway slaves, were in violation of the article of the Constitution. Tested by this rule, we are not prepared to say, that any of the provisions of this act are unconstitutional. Some provide the means of raising a fund to pay the debts of the municipalities, and the others are intended to secure the appropriation of the fund thus raised to that object. But if it were true, that some of the sections fall under the constitutional prohibition, this would not render the act entirely null. When portions of a law come within the reasonable intendment of its title, and others do not, the latter alone are unconstitutional, provided they can stand separately.

The first section of the act of 1847 clearly comes within the intendment of its title. It provides how the taxes, with which the debts of the municipalities are to be paid, shall be levied; and is totally unconnected with any of the sections objected to. Supposing those sections to be void, their nullity would not affect the power given to the municipalities, by the first section, to levy taxes equal and uniform. The kind of equality meant by the Legislature being stated in the act, nothing remains for us, but to give effect to their enactments. The taxes on the slaves for the years 1843 and 1844 were properly assessed, as in other parts of the municipality. Slaves are taxed independently of the land to which they are attached.

The judgment is affirmed, with costs.

~~~~~~~~~~~~~~~

## SAME CASE—ON A RE-HEARING.

THE judgment of the court, on a re-hearing, was pronounced by
PRESTON, J. A re-hearing having been ordered in this case, we have again carefully examined the effect of the acts of 1806, 1813, 1830, and 1834,

upon the power of the municipality to tax its rural property, and have come to <span>MUNICIPALITY No. THREE *v.* MICHOUD.</span> the conclusion again that the municipality had that power, for the reasons expressed in the original opinion. Other laws fortify this conclusion. By the laws cited, the Legislature made a distinction as to the amount of taxes to be imposed upon what were called the incorporated and the unincorporated portions of the city. But by the act of 1836, the whole city was divided into municipalities, and each municipality was incorporated as a distinct corporation. The 2d, 4th and 10th sections of the act specially gave to the municipalities all the rights and powers which, by all previous laws, belonged to the corporation of New Orleans, the greatest of which was the power to raise, by taxation, the revenues necessary for the government and administration of the corporation.

The property which it is sought to tax, was situated in the Fourth Ward of the Third Municipality. The ward was entitled to representation in the council of the municipality and in the General Council. The aldermen from the ward, in which this property now claiming exemption from taxation was situated, had the right to vote for taxes on other wards; and, *vice versa*, it seems reasonable that their aldermen should have the right to vote for taxes on the whole of this ward.

By an act of 1840, the State assessments of all property in the whole of the municipalities, were to be used for the imposition of taxes.

The reason of keeping up the ancient distinction between incorporated and unincorporated parts of the city, as to taxation, is not so forcible as imagined in argument. The Legislature had exempted parts of the city from taxes for the maintenance of lights of the city, the city watch, and for watering and cleansing the streets. But this constituted only a small part of the city burdens. The mayor, secretary and officers of the General Council were to be paid; the immense debt of the old city was to be paid, also the salaries of the officers administering the sinking fund; of the recorders of the municipalities, and their numerous other officers; the expenses of the courts, and criminal prosecutions; of public schools; of the poor, workhouses and prisons; and the innumerable other expenses which fall upon the municipalities in the discharge of their municipal duties: from none of which it is pretended the property taxed in this case is expressly exempted, and to most of which the proprietor has no pretence for exemption, which might not be made by any other citizen with equal plausibility —being expenditures equally beneficial to all. Indeed, the improvement of the streets and thoroughfares to and from the city contributes greatly to the facilities of the adjacent rural proprietors, and to the improvement and value of their property. They, in fact, use the streets, markets, and other improvements of the city, in common with other inhabitants. The assessment of their property for taxation, is reduced almost in proportion to their distance from the city—or rather, property in the city is increased in value so much, by the necessary improvements, that it is probably taxed in proportion to the expenditures in its vicinity. And after all, there is not so much inequality in taxation as appears by a superficial view. It is for legislative and municipal wisdom to regulate taxes as equally as possible, and dispose of the revenues as wisely as they can. Courts have no control over this difficult subject.

The Legislature, by an act approved the 18th of March, 1850, have again made a distinction between urban and rural property within the limits of the city, and as to the rate of taxation to be imposed on each: and it is to be hoped' the municipalities will be able to execute it in such a manner as to avoid all complaint and litigation hereafter.

MUNICIPALITY
No. THREE
*v.*
MICHOUD.

As to the case before the court, the taxes for the years 1843, 1844 and 1848, are claimed. In pursuance of the powers conferred upon the municipality by the act of 1836, she imposed the taxes claimed for 1843 and 1844, and might recover them but for her own proceedings. By a series of resolutions, adopted the 31st of March, 1845, the municipality determined not to tax rural property, including that for which exemption is claimed in the present suit, and ordered all receipts for taxes up to and including the year 1844, to be burned. This was a remission of the taxes on this property for the years 1843 and 1844; and they cannot be claimed again. The remission of a debt extinguishes it.

It is true, that the council of the municipality, on the 29th of December, 1845, revived the ordinances imposing taxes on rural as well as urban property; but laws can prescribe only for the future, they can have no retrospective operation. Code, art. 8. The revived ordinances could, therefore, only operate upon taxation for the year 1846, and subsequently. The power to lay and collect taxes, has ever been understood to operate prospectively; and never retrospectively, as contended. If the council could legally tax for a year back, we see no reason to prevent them from doing so for any number of years. Such has never been the interpretation of the power to lay and collect taxes, either by the Legislature, or political corporations acting under its authority.

As to the tax claimed for the year 1848, the act of 1847 expressly directed the municipality to assess and collect an equal tax on all the property within its limits. The power of the Legislature to direct this equal and uniform taxation, is unquestionable. It is in conformity to the letter of the Constitution, so far as its principles may apply to municipal taxation. The tax claimed for 1848, in the opinion of the majority of the court, is, therefore, clearly legal: and for it the plaintiffs must have judgment, with eight per cent interest, and costs in the district court.

As to the taxes claimed for the years 1843 and 1844, a majority of the court are of opinion, they cannot be recovered; and that the judgment of the district court should be reversed, as to the taxes allowed the plaintiffs for 1843 and 1844, and the appellees condemned to pay the costs of the appeal.

It is therefore ordered, adjudged and decreed, that the judgment rendered by this court, be annulled. It is further ordered and decreed, that the judgment of the court below be reversed, so far as relates to the taxes claimed for 1843 and 1844; and that the plaintiffs recover from the defendant, the tax claimed for 1848, with eight per cent interest, and costs in the district court; the appellees to pay the costs of the appeal.

ROST, J. I adhere to the decision in the case of *The Ursuline Nuns* v. *Third Municipality*, 2d Ann. 611; I see no cause to disturb the judgment first rendered in this case.

SLIDELL, J., dissenting. My opinion, that *Michoud* should not be held liable in this case, remains unchanged.