253 So.2d 192

**STATE of Louisiana, Appellant,**

**v.**

**Barbara Jean WELKNER and John Douglas Tassistro, Defendants-Appellees.**

**No. 51715.**

Sept. 30, 1971.

Dissenting Opinion Oct. 6, 1971.

Rehearing Denied Oct. 28, 1971.

Jack P. F. Gremillion, Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Maurice R. Franks, Asst. Dist. Attys., for plaintiff-appellant.

Bagert & Papale, Bernard J. Bagert, Jr., New Orleans, for defendants-appellees.

Joseph Neves Marcal, III, Marcal & O'Brien, New Orleans, for amicus curiae.

TATE, Justice.

The state appeals from a trial court judgment which sustained a motion to quash. The defendants were prosecuted under La. R.S. 40:971, as amended by Act 457 of 1970. The trial court held this 1970 statute unconstitutional insofar as it purported to apply to the control and use of barbiturate, amphetamine, and hallucinogenic drugs.

The trial court concluded the act was unconstitutional in this regard because its title was not sufficiently indicative of its object—because the provisions regulating amphetamines, barbiturates, and halllucinogens exceeded the limitations of the title of this enactment.

The principal issue of this appeal is whether the trial court's holding in this regard is correct.

In so holding, the court relied on Art. 3, Section 16, Louisiana Constitution of 1921. This pertinently provides that "Every statute enacted by the Legislature shall em-

brace but one object and *shall have a title indicative of its object."* [1]

■ The purpose of this constitutional requirement is to give the legislature and the public fair notice of the scope of the legislation. The requirement is designed to defeat deceitful practices of misleading the legislature into the passage of provisions not indicated by the title of the bill.

See: A. & M. Pest Control Service, Inc. v. LaBurre, 247 La. 315, 170 So.2d 855 (1965); Airey v. Tugwell, 197 La. 982, 3 So.2d 99 (1941); Comments, 8 La.L.Rev. 113 (1947) and 6 La.L.Rev. 72 (1944); 1 Sutherland, Statutory Construction, Section 1702 (3d ed., 1943).

## I.

The 1970 Act amended and re-enacted Sub-Part A of Part X ("Narcotics") of Chapter 4 ("Food and Drugs") of Title 40 ("Public Health and Safety") of the Louisiana Revised Statutes of 1950. Part X represents a consolidation of statutory law relating to the control of certain regulated drugs.

The holding of the trial court (that the body of the 1970 act exceeds the limitations of its title) can best be understood in the context of the drug control regulations provided by Part X *before* the 1970 revision.

Before 1970, Part X was composed of five sub-parts, as follows:

*Sub-Part A*, the "Uniform Narcotics Drug Law", mainly regulated the "hard" drugs (opium, including morphine, codeine, and heroin; and cocaine, etc.) and marijuana;

*Sub-Part B* regulated the seizure and forfeiture of vessels, vehicles, and aircraft involved in the illegal use of drugs under Part X;

*Sub-Part C* regulated the use of benzedrine within penal facilities;

*Sub-Part D* regulated barbiturates, central nervous stimulants (amphetamines, etc.), and hallucinogens;

*Sub-Part E* created the Louisiana Narcotic and Rehabilitation Commission.

According to the title of Act 457 of 1970, the legislature amended Sub-Part A (only) of Part X. Prior to the 1970 amendment, Sub-Part A had regulated only hard drugs and marijuana.[2] The title of Act 457 sets forth that it was *"To amend and re-enact Sub-Part A* of Part X of Chapter 4 of Title

---

1. The full text of Section 16 is:
 "Every statute enacted by the Legislature shall embrace but one object, and shall have a title indicative of its object.
 "The Legislature may, however, by means of a single statute, enact or revise a system of laws of a general or public nature, such as the general statutes, or a codification of laws on the same general subject matter, or both. Such a statute shall be deemed to embrace but one object and its title need only refer to the general purpose and scope of the statute."

40 of the Louisiana Revised Statutes of 1950, designated as the Uniform Controlled Dangerous Substances Law, *providing definition of narcotic* [3] *drugs * * *".*[4]

 The substance of the contention that the title of the Act limited its body is essentially this: The former Sub-Part A regulated hard drugs and marijuana only. Sub-Part A expressly did not apply to amphetamines, barbiturates, and hallucinogens; these were regulated only by Sub-Part D. Therefore, the new statute—entitled as amending Sub-Part A only—exceeds the scope of its title, insofar as attempting to regulate amphetamines, barbiturates, and hallucinogens in addition to the hard drugs and marijuana covered by the prior Sub-Part A, the only section of Part X now amended and re-enacted.

This contention is well founded. As we recently stated in A. & M. Pest Control Service, Inc. v. LaBurre, 247 La. 315, 170 So.2d 855 (1965): "* * * when an act seeks to amend certain sections of a general law by simple reference to the section to be amended, the amendment must be limited in its scope to the subject matter of the sections proposed to be amended."

This principle is in accord with the general American rule on statutory construction. As stated at Sutherland on Statutory Construction, Section 1908, pp. 347–48 (3d ed. 1943): "If the title specifies the section or sections to be amended in an act or in a code or revision, no other section can be amended * * * Under any other rule the title might refer to an inconsequential section of the prior law, yet the amendment might alter the entire act without warning." See also State v. American Sugar Refining Co., 106 La. 553, 31 So. 181 (1901).

Here, for instance, a purpose of Act 457 of 1970 was to reduce the penalties for the

2. The pre-1970 definition of "Narcotic drugs" included these drugs and excluded amphetamines, barbiturates and hallucinogens. La.R.S. 40:961(19), before its repeal by the 1970 statute.
3. The new definition of "Narcotic drugs" provided by the 1970 act includes only opium, cocoa leaves and opiates, and their derivatives or substances similar to them. It does not include amphetamines, barbiturates, and hallucinogens. If (as here) the title indicated that "Narcotic drugs" was to be defined, and the body of the statute had defined this term to include amphetamines, barbiturates, and hallucinogens, cf. Act 59 of 1971, then an entirely different question would have been presented; a legislator, alerted that the term "Narcotic drugs" was to be re-de-

fined, might have easily ascertained by reference to the new definition that amphetamines, barbiturates, and hallucinogens were to be covered by the new act.
4. The full title of Act 457 of 1970 provides as follows:
"To amend and reenact Sub-Part A of Part X of Chapter 4 of Title 40 of the Lousiana Revised Statutes of 1950, designated as the Uniform Controlled Dangerous Substances Law, providing definition of narcotic drugs; providing regulation of the manufacture, transportation, sale, possession or use thereof; providing penalties for violation; and providing generally with respect thereto including the administration thereof."

first conviction for the possession of marijuana from those for a felony (which include imprisonment in the State penitentiary) to those for a misdemeanor (which involves imprisonment in the parish jail instead).[5] A legislator, knowing that former Sub-Part A regulated marijuana, could be alerted that the new act might involve a change in penalties for the possession of this drug.

However, the new act provides for felony imprisonment for possession of amphetamines and barbiturates, whereas Sub-Part D provides only for misdemeanor punishment upon the first conviction.[6] A legislator, noting that the title of Act 457 referred only to amendment and reenactment of Sub-Part A (hard drugs and marijuana in the pre-1970 version), might not be alerted that the act also contemplated heavier penalties for amphetamines and barbiturates, drugs regulated pre-1970 not by Sub-Part A, but only by Sub-Part D.

■ We do not mean to state that the amending statute must be limited solely to changes of the specific provisions of the statutory section indicated as amended by the new act's title. New matter may be enacted by the amendatory legislation, "provided the amendment is germane to the subject of the original act, and is embraced

within the title of such amended act". Southern Hide Co. v. Best, 176 La. 347, 145 So. 682, 683–684 (1933).

Here, for instance, the title of the act indicated both that Sub-Part A was amended and reenacted *and* that a definition of "narcotic drugs" was to be provided, as well as regulation of the manufacture, use, etc, thereof. See Footnote 4 above. However, the definition of "narcotic drugs" in the body of the act did not include amphetamines, barbiturates, and hallucinogens; if it *had*, the new matter might well be germane to the subject of the original act and also embraced within the title of the new act, providing for a new definition of the term. See Footnote 3 above.

■ By reason of the authorities previously cited, we thus conclude as did the trial judge that the body of the statute—insofar as attempting to apply to amphetamines, barbiturates, and hallucinogens—is beyond the scope of its title, which constituted an amendment and reenactment of Sub-Part A only. Of course, as the cited authorities note, where the title as here restricts the body of the act, only the deviant portion is invalid, but the portion which conforms to the title is valid.

In attempting to evade application of this principle, the State relies upon State v.

5. Compare former La.R.S. 40:981(4) and (5), with La.R.S. 40:971(c) as enacted by Act 457 of 1970.

6. Compare La.R.S. 40:971(c) as enacted by Act 457 of 1970, with La.R.S. 40:1046.

O'Dell, 253 La. 418, 218 So.2d 318 (1969). There, we upheld a statute, despite an error in the designation of the Revised Statutes Title sought to be amended. The act's title indicated that sections of Title 14 (1931–38) of Louisiana Revised Statutes were being amended, when obviously Title 40 was intended.

O'Dell involved an incorrect designation in the nature of an easily ascertained and indisputable typographical error. Here, however, the title would have to be substantially expanded to permit the body of the act to regulate amphetamines, barbiturates, and hallucinogens. We cannot, in the guise of interpretation, rewrite the title of the 1970 act so as to include objects within its scope additional to that unambiguously indicated by its title.

## II.

The State alternatively argues that Act 457 of 1970 should be regarded as an enactment of "a system of laws of a general and public nature" or as "a codification of laws on the same general subject matter." Under Article 3, Section 16, Louisiana Constitution, the title of an enactment of such a system or codification "need only refer

to the general purpose and scope of the statute". (The full text of Section 16 is quoted in Footnote 1 above.)

We are not persuaded by this argument. In the first place, the title of Act 457 of 1970 specifically indicates that it intends to amend Sub-Part A only.

Further, the State's argument that it was intended to codify all the laws pertaining to the control of prohibited narcotics, including those regulated by Sub-Part D (amphetamines, barbiturates and hallucinogens), is negated by the circumstances that, in addition to the attacked Act 457, the very same 1970 legislature passed two acts specifically amending and reenacting sections of Sub-Part D pertaining solely to the control of amphetamines, barbiturates, and hallucinogens.[7]

Finally, Act 457's title does not itself indicate any intent to codify or enact a system of laws. See: State v. Carter, 227 La. 820, 80 So.2d 420 (1955); Wall v. Close, 203 La. 345, 14 So.2d 19 (1943). The title of the act (see Footnote 4) indicates that Sub-Part A will be designated as the "Uniform Controlled Dangerous Substances Law". Thus, entitling Sub-Part A does not exempt it from the requirement of Article 3, Sec-

---

7. Act 421 amended and reenacted La.R.S. 40:1033(2) to prohibit the refilling of any barbiturate and amphetamine prescriptions more than six months after date of issue and not more than five times within such six-month period. Act 488 amended La.R.S. 40:1046 to provide for felony instead of misdemeanor penalties for persons convicted the first time for possession and control of hallucinogenic drugs.

tion 16 that the title must be indicative of the object of the act, for it simply indicates a new designation for Sub-Part A and it does not indicate any substantive change. If, additionally, the title had indicated that the new enactment would define a "controlled dangerous substance", and if (as here) the definition included amphetamines, etc., a legislator might well be put on notice that a substantive change of regulation was contemplated so as to include amphetamines, etc., within the scope of the new statute—and thus, in such instance, the title might well embrace and be indicative of the object of the act. See Footnote 3 above. Cf., Act 59 of 1971.

In the instance of Act 457 of 1970, however, the title indicated Sub-Part A only (of Sub-Parts A through E) was to be amended, and the title did not embrace or indicate more than this. The statute must therefore be limited in its scope to its object of amending Sub-Part A only, and it must therefore be restricted insofar as the body of the enactment attempts to regulate objects within the scope of Sub-Parts B through E.[8]

8. Actually, Sub-Parts C ("Benzedrine") and E ("Louisiana Narcotics and Rehabilitation Commission") do not at all fall within the scope of the *body* of Act 457. However, provisions of Sub-Parts B (forfeiture of vessels, vehicles, and aircraft) and D (amphetamines, barbiturates, or hallucinogens) are in conflict with provisions of the *body* of Sub-Part A, as amended in 1970, relating to the same objects.

By Act 59 of 1971 the legislature amended and re-enacted Act 457 of 1970 and attempted to cure the deficiences of the title here discussed. We should note that our views and holding in the present case are limited in application to alleged offenses occurring between the effective date of Act 457 of 1970 and its repeal by Act 59 of 1971.

Having held Act 457 of 1970 unconstitutional insofar as it attempts to regulate amphetamines and barbiturates, we conclude that the trial judge properly sustained the defendants' motion to quash the information as amplified by the State's answer to the motion for bill of particulars. By this answer, the State had asserted that this prosecution was brought under La.R.S. 40:-971, as amended by Act 457 of 1970.[9]

### III.

In sustaining the motion to quash, the trial court ordered the defendants discharged from custody, in accordance with the relief requested by the motion. Not called to our trial brother's attention at the time were the provisions of Articles 485 [10]

9. La.Code Crim.P.Art. 532(5) provides:
 "A motion to quash may be based on one or more of the following grounds:
 " * * *
 "(5) A bill of particulars has shown a ground for quashing the indictment under Article 485."
 See Footnote 10 for the text of Article 485.
10. La.Code Crim.P. Art 485 provides:
 "If it appears from the bill of particu-

and 538 [11] of the Louisiana Code of Criminal Procedure. These in substance provide that, when a motion to quash is sustained on a ground that it may be cured by amendment or by a new information or indictment, such amendment may be allowed within a specified delay, with the defendant being held in custody (or his bail continued) pending the amendment or filing of the new information. See State v. Morales, 256 La. 940, 240 So.2d 714 (1970); cf., State v. Mann, 250 La. 1086, 202 So. 2d 259 (1967).

■ Of course, a defendant must be discharged from custody when the offense is not punishable under a valid statute, La. Code Crim.P. Art. 438(1) (quoted in full in Footnote 11 above). Here, however, Sub-Part D (not repealed by Sub-Part A

and in effect at the time of the offenses presently charged) provides criminal penalties for the possession of amphetamines and barbiturates, the offense with which the defendants are charged. See La.R.S. 40:1046.

We conclude, therefore, that the trial court judgment ordering the defendants discharged should be modified to allow the State a reasonable time within which to amend the bill of particulars or to file a new information.

*Decree*

Accordingly, the judgment of the trial court is affirmed in its holding that Act 457 of 1970 is unconstitutional insofar as it purports to regulate amphetamines, barbiturates, and hallucinogens. The judgment of the trial court ordering the de-

---

lars furnished under Article 484, together with any particulars appearing in the indictment, that the offense charged in the indictment was not committed, or that the defendant did not commit it, or that there is a ground for quashing the indictment, the court may on its own motion, and on motion of the defendant shall, order that the indictment be quashed unless the defect is cured. The defect will be cured if the district attorney furnishes, within a period fixed by the court and not to exceed three days from the order, another bill of particulars which either by itself or together with any particulars appearing in the indictment so states the particulars as to make it appear that the offense charged was committed by the defendant, or that there is no ground for quashing the indictment, as the case may be."

11. La.Code Crim.P. Art 538 provides:
"The court shall order the defendant discharged from custody or bail, as to that charge, when it sustains a motion to quash based upon the ground that:
"(1) The offense is not punishable under a valid statute;
"(2) Trial for the offense charged would constitute double jeopardy;
"(3) The time limitation for the institution of prosecution or for the commencement of trial has expired; or
"(4) The court has no jurisdiction of the offense charged.
*"In other cases, when a motion to quash is sustained, the court may order that the defendant be held in custody or that his bail be continued for a specified time, pending the filing of a new indictment."* [Emphasis supplied]
The present instance falls under the italicized last paragraph of the article.

fendants·discharged is modified, however, insofar as it provides unconditionally for the discharge of the defendants. It is now ordered: that the defendants be held in custody (subject to present bail requirements, see La.Code Crim.P. Art. 538) for a period not to exceed thirty (30) days from date of finality of this decree, to allow the State, if it desires, to file a new information or an amended bill of particulars showing that the defendants are being charged with the crime of possession of amphetamines and barbiturates under a valid statute; and that, in default of such amendment or new information within the period prescribed, the defendants be discharged from custody.

Affirmed in part, reversed in part.

HAMLIN, Justice (dissenting).

A reading of the law under attack, Act 457 of 1970, will readily disclose that it is a code.[1] It has all of the indicia of a code and was, in my opinion, intended to be a code. The Legislature by means of a single statute may enact a codification of laws on the same general subject matter;[2] the constitutionality of Act 457 of 1970 should be upheld.

The principal issue of this appeal, as stated in the majority opinion, is whether the Act is unconstitutional because its title is not sufficiently indicative of its object.

It is universally recognized that such an attack upon a statute is the weakest known to our law and jurisprudence.

It leaps to the mind that there is not, and cannot be, deceitful practice or a misleading of the Legislature when it is presented with a bill for the suppression and outlawing of dangerous substances.

The painstaking discussion in the majority opinion to show unconstitutionality, to my mind, is an invitation for attacks on other existing laws enacted for the suppression of crime whenever these laws are of unusual length.

1. "CODE. A body of law established by the legislative authority of the state, and designed to regulate completely, so far as a statute may, the subjects to which it relates.
 "* * *" The Cyclopedic Law Dictionary, Third Edition, 1949. See, Wall v. Close, 203 La. 345, 14 So.2d 19, 26 (1943)..
 "* * * * a codification of the entire body of law, or of the entire body of law on a distinct subject, compiled by a selective process, including some modifications of, and additions to, pre-existing law, and made official through legislative adoption, * * *" Ballentine's Law Dictionary, Third Edition, 1969.

2. "* * * *
 "The Legislature may, however, by means of a single statute, enact or revise a system of laws of a general or public nature, such as the general statutes, or a codification of laws on the same general subject matter, or both. Such a statute shall be deemed to embrace but one object and its title need only refer to the general purpose and scope of the statute." Art. III, Sec. 16, La.Const. of 1921, as amended.

These attacks will go on and on forever unless reason, common sense, and the rights of the public are placed before exaggerated judicial concern over the rights of an accused.

I respectfully dissent.

SUMMERS, Justice (dissenting).

Article III, Section 16, of the Louisiana Constitution provides:

Every statute enacted by the Legislature shall embrace but one object, and shall have a title indicative of its object.

The Legislature may, however, by means of a single statute, enact or revise a system of laws of a general or public nature, such as the general statute, or a codification of laws on the same general subject.

The primary purpose of the title-body clause contained in paragraph one is to prevent the joining of incongruous and unrelated matter in one act, State v. Hertzog, 243 La. 647, 146 So.2d 149. (1962); to give legislators fair notice of the scope of proposed legislation and to defeat deceitful, mysterious and misleading practices of entrapping the legislature into passage of provisions unrelated to and not intimated by the title of the bill, A. & M. Pest Control Service, Inc. v. LaBurre, 247 La. 315, 170 So.2d 855 (1965).

By decisions of this court it has been repeatedly affirmed that this title-body clause, requiring the title of an act to indicate the subject matter of its body, must be broadly construed with a view to effectuating, not frustating, the legislative purpose. Bethlehem Supply Company v. Pan-Southern Petroleum Corp., 207 La. 149, 20 So.2d 737 (1945); Ricks v. Department of State Civil Service, 200 La. 341, 8 So.2d 49 (1939); Jackson v. Hart, 192 La. 1068, 190 So. 220 (1939). In its consideration of the issue this court has held that the title of a law is not to be strictly or technically interpreted, and, if it states the object according to the understanding of reasonable men, it is sufficient. Bethlehem Supply Co. v. Pan-Southern Petroleum Corp., supra; State ex rel. Porterie v. Smith, 184 La. 263, 166 So. 72 (1936); Lacoste v. Department of Conservation of State of Louisiana, 151 La. 909, 92 So. 381 (1922); Municipality No. Three v. Michoud, 6 La.Ann. 605 (1851).

Nor does the constitution require that every change which an act may effect in other laws be expressed in detail in the title of the new act, the requirement is merely that the title shall be appropriate to the subject dealt with in the act itself and that the title not be misleading as to any purpose intended to be accomplished by the act. Louisiana Board of Pharmacy v. Smith, 226 La. 537, 76 So.2d 722 (1955). In resolving this issue, the presumption

exists that the act is constitutional. State ex rel. Board of Com'rs, etc. v. Bergeron, 235 La. 879, 106 So.2d 295 (1958); Ramey v. Cudahy Packing Co., 200 So. 333 (La. App.1941).

To determine whether an act is violative of the title-body clause, courts must first examine the body of the act to ascertain its purpose. Ricks v. Department of State Civil Service, supra; Peck v. City of New Orleans, 199 La. 76, 5 So.2d 508 (1942).

The title of the act declared unconstitutional is set out in these words:

### An Act

To amend and reenact Sub-Part A of Part X of Chapter 4 of Title 40 of the Louisiana Revised Statutes of 1950, designated as the Uniform Controlled Dangerous Substances Law, providing definition of narcotic drugs; providing regulation of the manufacture, transportation, sale, possession or use thereof; providing penalties for violation; and providing generally with respect thereto including the administration thereof.

Prior to the amendment of 1970, Part X of Chapter 4 of Title 40 of the Revised Statutes was entitled "Narcotics" and contained Sub-Part A., titled "Uniform Narcotic Drug Law"; Sub-Part B, titled "Miscellaneous"; Sub-Part C., titled "Benzedrine" and Sub-Part D., titled "Barbiturate and Central Nervous System Law". Part X of Chapter 4 contains all Louisiana law dealing with narcotics.

The body of Act 457 of 1970 is likewise comprehensive in its treatment, and, as its title indicates, it defines all narcotic drugs subject to control, regulates their manufacture, transportation, sale, possession or use. The body of the act further provides penalties for violations and provides generally with respect to narcotic drugs and the administration of the law on the subject.

In substance, therefore, Act 457 of 1970 treats of every phase of narcotic law covered by Part X of Chapter 4. All laws in conflict with its provisions are repealed. Indeed, it covers the entire subject of narcotic drugs, for there is no reservation or exception indicated to the general, all-embracing terminology employed in its title or body.

The principle contention of the attack upon the act is that its title refers only to Sub-Part A of Part X of Chapter 4 of Title 40 of the Revised Statutes when Sub-Parts B, C and D are also contained in Part X; Sub-Part D being the law under which the prosecution would have fallen in the absence of Act 457 of 1970 under which the prosecution was in fact brought.

In my view the inadvertent failure of the drafters of Act 457 to refer to the other Sub-Parts of Part X of Chapter 4

of Title 40 of the Revised Statute is unimportant so long as the substance of the title of the act clearly demonstrates that it purports to cover the entire subject matter of Part X of Chapter 4 of Title 40 of the Revised Statutes.

By referring in its title to controlled dangerous substances, to which classification such drugs as amphetamines and barbiturates belong, Act 457 of 1970 sufficiently apprises legislators of the scope of the body of the act. And I cannot believe that the constitutional purpose of protecting legislators from deceitful practices has been frustrated. The senate amended the bill ten times and the house proposed and acted upon 156 amendments. 2 Official Journal of the Senate 1866 (1970). Surely such careful attention to this act precludes any inference that the legislature was deceived by the title.

Another important constitutional guide to interpretation is the language which makes it evident that it is no longer required, as it was formerly in preceding constitutions, that the *object* of the law be *expressed* in its title. It is sufficient now under the clear meaning of Section 16 of Article III that the title of the statute be *indicative* of its object. "The criterion would seem to be that the title of a statute is sufficient if it places those who are to be affected by the act upon inquiry into its contents." State ex rel. Board of

Com'rs, etc. v. Bergeron, 235 La. 879, 106 So.2d 295 (1958).

This case is no different than our ruling in State v. O'Dell, 253 La. 418, 218 So.2d 318 (1969), where we held ineffective an attack upon a narcotics act because both the title and body incorrectly signified that it amended certain sections of Title 14 of the Revised Statutes (Criminal Code) when actually the sections reenacted were contained in Title 40 of the Revised Statutes.

I am moreover of the firm opinion that the comprehensiveness of Act 457 of 1970; its attempt to cover the entire subject matter of narcotic drugs in Louisiana law; its length (29 pages) and its format make it fall within the contemplation of a "system of laws of a general or public nature" or "a codification of laws on the same subject" contained in paragraph 2 of Section 16 of Article III of the Constitution. It is as much a code as the Louisiana Trust Code, the Corporation Code, or the Insurance Code. Under paragraph 2 of Section 16 of Article III of the Constitution, which permits the enactment of a system of laws or a code, the statute need only refer in its title to the general purpose and scope of the enactment. This it does.

By a super technical requirement that all Sub-Parts of Part X amended by Act 457 of 1970 be specifically referred to

in the title of the act, even though the unequivocal meaning of the language used in the title is that the entire subject matter of all Sub-Parts of Part X are amended and superseded, this court strikes down this important legislation seeking to control the menace of drug abuse in this State.