264 So.2d 611

**STATE of Louisiana**

**v.**

**Benjamin Frank KENT.**

**No. 52277.**

June 29, 1972.

William J. Guste, Jr., Atty. Gen., Harry
H. Howard, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Maurice R.
Franks, H. R. Alexander, Asst. Dist.
Attys., for plaintiff-relator.

W. Donald Cashio, New Orleans, for defendant-respondent.

BARHAM, Justice.

Defendant Benjamin Kent was charged with possession of a controlled dangerous substance, Tuinol, under R.S. 40:971 as amended by Act 457 of 1970, tried, and found guilty. Before he could be sentenced, however, this court rendered its decision in State v. Welkner, 259 La. 815, 253 So.2d 192 (1971), declaring unconstitutional that portion of Act 457 of 1970 which was to regulate amphetamines, barbiturates, and hallucinogens, including Tuinol. A motion in arrest of judgment was filed on behalf of Kent, and after a hearing the district court maintained the motion in arrest. A second bill of information was then filed against Kent by the district attorney charging him with possession of barbiturates under R.S. 40:1033. The date of the alleged offense in the second bill of information was the same as in the first, February 5, 1971. In response to this bill of information a motion to quash was filed, and the district court sustained it, holding that a trial on this charge would be double jeopardy. The State applied for writs which were granted.

In support of the plea of double jeopardy the defendant argues that when Articles 591, 595, and 862, Code of Criminal Procedure, are considered together, it becomes apparent that the plea of double

jeopardy is valid in light of the earlier proceeding had against him. Those articles read:

"Art. 591. Double jeopardy; definition

"No person shall be twice put in jeopardy of life or liberty for the same offense, except, when on his own motion, a new trial has been granted or judgment has been arrested, or where there has been a mistrial legally ordered under the provisions of Article 775 or ordered with the express consent of the defendant."

"Art. 595. Double jeopardy; when not applicable

"A person shall not be considered as having been in jeopardy in a trial in which:

"(1) The court was illegally constituted or lacked jurisdiction;

"(2) The prosecution was dismissed because it was instituted in an improper venue; or

"(3) The indictment was invalid."

"Art. 862. Effect of sustaining motion in arrest of judgment

"If the judgment be arrested because of a defect in the indictment, the indictment shall be dismissed and the defendant shall be discharged as to that indictment. However, a new indictment may be filed within the time limitation stated in Article 576.

"If the judgment is arrested because the court is without jurisdiction of the case, the defendant shall be discharged, but may be tried by a court of proper jurisdiction.

"If the judgment is arrested because the wrong type of tribunal tried the case, or because the verdict is not responsive to the indictment or is otherwise fatally defective, the defendant shall be remanded to custody or bail to await a new trial.

"If the judgment is arrested on any other ground, the defendant shall be discharged."

Defendant contends that where the prior proceeding was dismissed on a motion in arrest of judgment on grounds not enumerated in Article 595 and not listed in the first three paragraphs of Article 862, double jeopardy does attach and effectively bars any subsequent prosecution for the same offense. In that earlier proceeding the motion in arrest of judgment sustained by the trial judge alleged that "1) The offense charged is not punishable under a valid statute *in that the section of the statute under which the defendant was charged has been declared unconstitutional by the Supreme Court of the State of Louisiana*" and "2) The verdict is so defective that it will not form the basis of a valid judgment". The minute entry showing the ruling of the trial judge states that after consideration of the evidence and *"the judgment of the Supreme Court"*, the motion was maintained and the defendant discharged. (Emphasis supplied.) A bill of

exceptions was reserved to that ruling, and the State filed notice of intention to apply for a writ of certiorari but later withdrew the notice. That ruling then became final, and any attack upon its validity can no longer be raised; but it is equally true that that proceeding cannot now be said to have intended any more or any less than what was actually done.

Article 859(2), Code of Criminal Procedure, states as a ground for the arrest of a judgment that "The offense charged is not punishable under a valid statute", meaning that the act complained of is not in violation of any valid penal law. However, in the prior proceeding against this defendant the motion in arrest of judgment was not upheld on such a broad ground. In that proceeding a limited plea was urged that the particular statute under which the defendant had been charged had been declared unconstitutional, obviously referring to the State v. Welkner decision. And it was this ground upon which the trial judge ruled. He thus determined only that the information was fatally defective in charging an offense under a statute which was unconstitutional and which therefore could not be the basis for criminal prosecution.

In considering Articles 591, 595, and 862 we must construe them together as they, and other provisions of the Code of Criminal Procedure, implement the constitutional safeguards against double jeopardy found in Article I, Section 9, of the Louisiana Constitution. This does not mean that any one of these provisions is to be read to the exclusion of another.

Article 591 speaks in broad terms in providing a definition of double jeopardy and the exceptions when a defendant can be retried without violating that constitutionally protected right. But it is in fact not a full definition of double jeopardy. In giving the exceptions the article simply states that when on the motion of the defendant a new trial is granted or a judgment arrested, or where there has been a legally ordered mistrial or one ordered with the consent of defendant, double jeopardy does not apply. Article 595 is meant to be illustrative of non-jeopardy proceedings in trials, setting out examples of frequent bases for dismissal of a prior proceeding where the defendant has not been placed in "danger", just as Article 596 illustrates requirements for double jeopardy. None of these articles are all-inclusive. They do not alter the fundamental basis for determining whether a trial on a second indictment would constitute jeopardy.

We are in sympathy with the difficulty of the defendant and the State in interpreting the double jeopardy articles as they appear in the Code of Criminal Procedure. To the extent that we must apply federal constitutional safeguards in determining double jeopardy the Louisiana constitutional provision leaves much to be desired because a literal interpretation could lead to

absurdities. There are numerous pitfalls in the construction of the Code in determining exactly when double jeopardy applies. However, we have no doubt under the present circumstances that the defendant was not in jeopardy in the prior proceeding where the trial judge declared that the offense attributable to him could not be prosecuted under an information alleging the act to be in violation of a statute which was unconstitutional.

In the first proceeding the trial court simply determined in ruling upon the motion in arrest of judgment that the bill of information failed to charge an offense under the particular statute, and that therefore the proceedings had thereafter were invalid. Jeopardy did not attach because of this ruling. C.Cr.P. Art. 595(3). Whether any other statute could support a bill of information for the exact offense was not determined by the trial judge. If in fact there is a statute which punishes the crime charged in the first information, further proceedings may be had which would not constitute double jeopardy.

■ This brings us to the second issue raised in the motion to quash, which was not ruled upon by the trial judge but is urged alternatively here to support the quashing of the information. That question is whether the information presently filed fails to charge an offense punishable *under any valid statute*. Specifically, the question is whether the State could charge this defendant on January 7, 1972, with possession of barbiturates on February 5, 1971, under R.S. 40:1033.* The defendant argues that when Act 59 of 1971 became effective on June 15, 1971, R.S. 40:1033 went out of existence and that the only applicable law regulating possession of barbiturates was R.S. 40:971 as amended by the 1971 legislation. The State answered this contention by taking the position that the saving clauses of Act 457 of 1970, Section

---

* Former R.S. 40:1033 regulated the particular offense with which we are here concerned, the illegal possession of barbiturates. Act 457 of 1970, the Uniform Controlled Dangerous Substances Law, among other things attempted to repeal Sub-Part D of Part X of Chapter 4 of Title 40 of the Revised Statutes, which included former R.S. 40:1033. As of the effective date of the 1970 act, it purported to regulate under the new R.S. 40:971 illegal possession of barbiturates. In 1971 litigation was pending concerning the constitutionality of Act 457 of 1970 as it attempted to repeal Sub-Part D. That Legislature, realizing that there was a possible deficiency in the 1970 act, adopted Act 59 of 1971 which amended and reenacted Act 457 of 1970. In State v. Welkner, 259 La. 815, 253 So.2d 192 (1971), this court did declare the particular portion of the 1970 act unconstitutional, so R.S. 40:1033 was not repealed by it. In 1972 this court held that Act 59 of 1971 had cured the defects which made that portion of Act 457 regulating amphetamines, barbiturates, and hallucinogens unconstitutional. State v. Dooley, 261 La. 295, 259 So.2d 329 (1972). Therefore present R.S. 40:971 became law, and former R.S. 40:1033 was repealed when Act 59 of 1971 became effective on June 15, 1971.

1, Subsection 987(a), and Section 4, were reenacted and brought forward into Act 59 of 1971. To this the defendant counters by urging that although these sections remained in effect, the reference made in the two clauses as to the effective date of the act means July 29, 1970, the date of Act 457 of 1970, and not June 15, 1971, the date of Act 59 of 1971.

Whether or not these savings clauses were brought forward is immaterial to a determination of this issue. Although neither the State nor the defendant cited it, there is a general saving statute which would allow this prosecution. R.S. 24:171 reads: "The repeal of any law shall not have the effect of releasing or extinguishing any penalty, forfeiture or liability, civil or criminal, incurred under such law unless the repealing act expressly so provides, and such law shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability." We have said that this law applies not only to the Criminal Code, but to any law. State v. Bowie, 221 La. 41, 58 So.2d 415 (1952). In State v. Robinson, 221 La. 19, 58 So.2d 408 (1952), we recognized the applicability of this general saving statute to the law on narcotics.

Act 457 of 1970 as amended by Act 59 of 1971 neither expressly nor even impliedly extinguished prosecutions under prior valid statutes. The obvious intent is to the contrary. Therefore, former R.S. 40:1033 is still a valid law for the purpose of prosecuting offenses which occurred prior to the effective date of Act 59 of 1971.

The judgment of the district court sustaining the motion to quash is reversed, and the case is remanded to that court for further proceedings.