345 So.2d 1166 (1977)
STATE of Louisiana, Relator,
v.
James JEWELL, Respondent.
No. 58942.
Supreme Court of Louisiana.
May 16, 1977.
*1167 Sam J. D'Amico, D'Amico & Curet, Baton Rouge, for respondent.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leon A. Picou, Jr., Dist. Atty., R. Neal Wilkinson, Asst. Atty. Gen., for relator.
TATE, Justice.
At the state's instance, we granted certiorari to review the ruling of the trial court dismissing indictments of the defendant. 341 So.2d 408. He was indicted on three counts of introducing contraband (marijuana) upon the grounds of the state penitentiary in violation of La.R.S. 14:402 (1958). The trial court held that marijuana does not fall within the type of "drug" defined as contraband by the cited statute.
Briefly, the issue is whether the classification of marijuana as a contraband "narcotic" drug by the 1958 enactment (14:402), for the purposes of that statute, was affected by the change of classification of marijuana from a "narcotic" to a "hallucinogenic" drug for the purposes of other statutes penalizing the possession and distribution of illegal drugs. For reasons to be set forth, we find no legislative intent to effect such change.

(1)
La.R.S. 14:402, enacted by Act 269 of 1958, prohibited the introduction into penal institutions of "any narcotic or hypnotic or excitive drug or any drug of whatever kind or nature including nasal inhalators of any variety, sleeping pills or barbiturates of any variety that create or may create a hypnotic effect if taken internally * * *."[1]
At the time of the 1958 enactment, the Uniform Narcotic Drug Law (La.R.S. 40:961 (1950) et seq.) and the Louisiana Barbiturate and Central Nervous System Stimulant Law (La.R.S. 40:1031 (1952) et seq.) were the principal statutes prohibiting as illegal the possession and distribution of certain specified drugs.
Under the former statute, marijuana was a "narcotic" drug.[2] The latter statute referred to barbiturates as a "hypnotic" drug, see La.R.S. 40:1032 (1952), while its declaring illegal certain "central nervous stimulant" substances can be regarded as referring to "excitive" drugs.[3]
We thus regard the 1958 enactment as reflecting a legislative purpose to prohibit the introduction into the penal institutions *1168 of various substances including, pertinently to the present issue, those drugs of which possession and distribution were made illegal by the criminal statutes then in effect.
We so conclude to this effect as to the "narcotic or hypnotic or excitive" drugs made contraband by the 1958 statute (14:402), by construing the terms of the 1958 enactment in the light of other drug statutes in effect at the time of its enactment. See La.Civil Code Art. 17: "Laws in pari materia, or upon the same subject matter, must be construed with a reference to each other; what is clear in one statute may be called in aid to explain what is doubtful in another."
Therefore, although scientifically speaking marijuana may not be a narcotic, hypnotic, or excitive drug, the intent of the 1958 statute (14:402) was to prohibit its introduction into the penitentiary, since marijuana was then legislatively classified as a "narcotic" drug. See La.R.S. 40:961(13) (1950), quoted in footnote 2 above.

(2)
We do not understand the accused to differ with this interpretation of the 1958 enactment through construing it with other drug laws, as their being laws in pari materia. However, the accused contends with great force that likewise the 1958 statute (14:402) should today be construed in the light of the present prohibited-drug statute, the Uniform Controlled Dangerous Substances Law, which replaces those statutes in effect in 1958. See Act 457 of 1970 and Act 634 of 1972, amending and reenacting La.R.S. 40:961 et seq. For statutory history see also State v. Scott, 278 So.2d 121, 126-27 (La.1973), and State v. Welkner, 259 La. 815, 253 So.2d 192 (1971).
Under these subsequent statutory enactments, marijuana is no longer legislatively classified as a narcotic drug. See La.R.S. 40:961(20) (1972); cf. also La.R.S. 40:961(18) (1973). Likewise, by reason of these enactments, the penalties for possession and distribution of marijuana are greatly reduced.
The trial court upheld these forceful arguments. Upon the principle that criminal statutes are strictly construed, our trial brother held that, by reason of the subsequent statutory enactments, the 1958 statute (14:402) no longer prohibits the introduction of marijuana into the state penitentiary, since it is no longer statutorily classified as a "narcotic" drug by the possession-distribution statute now in force. (By this statute, marijuana is now classified as a "hallucinogenic substance", see La.R.S. 40:964, Schedule I-C (1972).)

(3)
The original meaning of the 1958 enactment (La.R.S. 14:402) clearly included within its prohibitory scope the introduction of marijuana onto penitentiary premises.
The issue, as we see it, is whether we can properly deduce from the subsequent amendments of other drug laws, by which marijuana is now classified as a "hallucinogenic" instead of as a "narcotic" drug, any legislative purpose by reason of which the 1958 enactment no longer includes marijuana as a contraband substance which cannot be introduced into the penitentiary.
We do not find such legislative intent.
The 1970 and 1972 enactments of the Uniform Controlled Dangerous Substances Law re-codified our laws against possession and distribution of illegal drugs. It did indeed replace the former Uniform Narcotic Drug Law, by which marijuana was classified as a "narcotic" drug. See La.R.S. 40:961 (1950, 1970, 1972). In re-classifying marijuana as a "hallucinogenic" drug, it is true, the penalties for its possession and distribution were greatly lessened by the new law. Nevertheless, possession and distribution of marijuana are still made illegal by it.
The prohibition of the 1958 statute (14:402) extends not only to illegal drugs but also to such items as intoxicating beverages, currency, and written communications (see footnote 1). The apparent thrust of the statute is in the interest of maintaining penitentiary discipline and also of preventing disorderly or illegal activity by penitentiary *1169 inmates, including through drug use or abuse (as well as through introduction of other materials or substances not in themselves unlawful unless introduced into the penitentiary in violation of the purposes and wording of the statute).
We therefore conclude that the replacement of the 1950 Uniform Narcotic Drug Law by the 1970 Uniform Controlled Dangerous Substances Act was not intended to affect the prohibition by the present 1958 act (14:402) of the introduction of marijuana into the penitentiary: Marijuana may not be a "narcotic" drug under the legislative classification of the latter act for its technical purposes; nevertheless, it remains a "narcotic" drug for purposes of the 1958 statute (14:402), both in the light of the original wording's legislative intent and also within one of the accepted everyday meanings of the term "narcotic" drug.[4]

(4)
The accused contends, however, that this interpretation offends the rule of statutory construction that penal statutes should be strictly construed against the state. 3 Sutherland, Statutory Construction, Section 59.03 (4th ed., Sands ed., 1974).
The rule, however, "is merely one among various aids which may be useful in determining the meaning of penal laws. This has been recognized time and again by the decisions, which frequently enunciate the principle that the intent of the legislature, or the meaning of the statute, must govern and that a strict construction should not be permitted to defeat the policy and purpose of the statute." Sutherland, Section 59.06 at p. 18. "`The rule of strict construction confines an offense to the words of the statute, but it permits the words not only to be read naturally, but to be given a meaning in harmony with the purpose and intent of the law as far as it may be done without distortion of language.'" Id.
The principal modern justifications for the rule of strict construction of criminal statutes is that (a) the power to define crimes lies with the legislature, so therefore the courts should not by interpretation extend the statute's scope of criminality and (b) potential violators should receive fair warning from the terms of a statute of their conduct's criminality. Dickerson, The Interpretation and Application of Statutes 208-211 (1975).
For the reasons earlier noted, the interpretation we have reached does not offend these functional aims of the rule of strict construction: The legislature intended the present conduct to be penalized by the statute; in the ordinary meaning of language (see footnote 4), the present conduct is adequately described by the statutory prohibition.
Consistent with the above principles, is the principle of interpretation announced by La.R.S. 14:3 of our Criminal Code that its articles "cannot be extended by analogy so as to create crimes not provided for herein; however, in order to promote justice and to effect the objects of law, all of its provisions shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision."
Our interpretation of the 1958 enactment (14:402) is in accord with these principles of construction of criminal statutes.

Decree
For the reasons stated, we reverse the judgments sustaining the motions to quash the present indictments, we reinstate the indictments, and we remand these prosecutions for further proceedings in accordance with law.
REVERSED AND REMANDED.
NOTES
[1] La.R.S. 14:402(A) in full provides:

"It shall be unlawful to introduce or attempt to introduce into or upon the grounds of any correctional or penal institution under the supervision or control of the Board of Institutions of the State of Louisiana or take or attempt to take or send therefrom any of the following articles which are hereby declared to be contraband for the purposes of this Section, to wit: any written communication or any currency or coin given or transmitted or intended to be given or transmitted to any inmate of any correctional or penal institution under the supervision and direction of the Louisiana State Board of Institutions; any article of food or clothing; any intoxicating beverage or beverage which causes or may cause an intoxicating effect; any narcotic or hypnotic or excitive drug or any drug of whatever kind or nature including nasal inhalators of any variety, sleeping pills or barbiturates of any variety that create or may create a hypnotic effect if taken internally; and any firearm or any instrumentality customarily used as a dangerous weapon, except through regular channels as authorized by the officer in charge of each correctional or penal institution. Whoever violates the provisions of this Subsection shall upon conviction be imprisoned in the state penitentiary for not more than three years without being eligible for a suspended sentence or for a parole." (Italics ours.)
[2] See La.R.S. 40:961(13) (1950): `"Narcotic Drugs' means coca leaves, opium, cannabis, marijuana, isonipecaine and every substance neither chemically or physically distinguishable from them."
[3] See Webster's Third New International Dictionary, verbo "excite", with its synonym of "stimulate", pp. 792-93; and verbo (suffix) "__ ive", with the meaning that the adjective completed by the suffix means that the adjective "performs and tends toward and serves to accomplish" the action indicated by the prefix verb, p. 1204 (1961).
[4] See Webster's New Collegiate Dictionary, verbo "narcotic", meaning b: "a drug (as marijuana or LSD) subject to restriction similar to that of addictive narcotics whether in fact physiologically addictive and narcotic or not * * *." p. 764 (1975).