347 So.2d 160 (1977)
STATE of Louisiana ex rel. William J. GUSTE, Jr., Attorney General.
v.
LEGISLATIVE BUDGET COMMITTEE et al.
No. 59726.
Supreme Court of Louisiana.
April 27, 1977.
Reasons for Judgment May 5, 1977.
Dissenting Opinion June 28, 1977.
Concurring Opinion July 1, 1977.
*161 William D. Brown, Brown, Wicker & Lee, Monroe, Camille F. Gravel, Jr., Christopher J. Roy, Gravel, Roy & Burnes, Alexandria, for defendants-respondents.
William J. Guste, Jr., Atty. Gen., Kendall L. Vick, Donald B. Ensenat, Asst. Attys. Gen., Ronald C. Davis, Staff Atty., Louisiana Dept. of Justice, New Orleans, for plaintiff-applicant.
DIXON, Justice.
On the application of William J. Guste, Jr., Attorney General, plaintiff in the above entitled and numbered cause, we granted writs on the 22nd Day of April, 1977, 345 So.2d 48 to consider the ruling of the district court, which had dismissed the plaintiff's suit on April 7, 1977. Because of representations by the applicant of the urgent nature of the issues, this case was fixed for argument on April 26, 1977.
For reasons to be assigned in a written opinion to be handed down at a later date, the judgment of the district court is affirmed.

OPINION
DIXON, Justice.
On January 3, 1977 the State of Louisiana ex rel. William J. Guste, Jr., Attorney *162 General, filed suit for a declaratory judgment against the Legislative Budget Committee and its individual members,[1] seeking to have the provisions of R.S. 39:311(A) declared unconstitutional. The Nineteenth Judicial District Court found the statute constitutional and entered judgment dismissing the plaintiff's suit on the merits. The Attorney General applied to this court for a writ of certiorari to review the adverse judgment of the district court. On April 22, 1977 the State's application for a writ of certiorari was granted. State of Louisiana ex rel. Guste, Jr., Attorney General v. Legislative Budget Committee, 345 So.2d 48 (La.). For the reasons set forth below, the judgment of the district court is affirmed.
In 1962 the legislature first created the Legislative Budget Committee. La.Acts 1962, No. 368 § 1, emerg. eff. July 18, 1962, now R.S. 39:311 et seq. With some modifications the committee has been in existence for almost fifteen years. In 1976 the legislature re-enacted R.S. 39:311 et seq. La.Acts 1976, No. 538 § 1. R.S. 39:311 currently provides:
"A. The Legislative Budget Committee is hereby created. The committee shall be composed of twenty-eight members, twelve from the membership of the House of Representatives, twelve from the membership of the Senate, to be appointed by the governor; the chairman of the Appropriations Committee of the House of Representatives; the chairman of the Senate Finance Committee; the speaker of the House of Representatives and the president of the Senate; provided, however, that the speaker of the House of Representatives and the president of the Senate may each authorize one member of their respective bodies to meet with the committee in their absence which person shall serve and exercise full voting privileges as a member of the committee. Of the members appointed from each of the houses of the legislature one shall be appointed from each of the congressional districts in the state; the four additional members appointed from the membership of the House of Representatives and the four additional members appointed from the membership of the Senate shall be selected at large.
"The initial appointments to be made in accordance with the provisions of this Subsection shall be made not later than the first day of September, 1976. The members of the committee shall serve for terms of four years or until their successors are appointed and take office. A vacancy for any cause shall be filled for the unexpired term in the same manner as the original appointment.
"B. The committee shall select a chairman, a vice chairman, sergeant at arms and such other officers and employees as the committee deems necessary.
"C. The members of the committee, as well as such individuals as may be authorized by the speaker of the House of Representatives and/or the president of the Senate to meet in their absence, shall receive the same per diem and travel allowance in the performance of their duties as is provided for members of the legislature."
The functions of the committee are set down in R.S. 39:312 as follows:
"It shall be the duty of the committee, with the assistance of the division of administration and legislative fiscal office, to make such study and examination of matters pertaining to the budgeting of state funds and the revenues, expenditures and fiscal affairs of the state as it deems desirable including the authority to recommend and assist in implementing zero base budgeting by state agencies. The committee shall work with the office of the governor and the division of administration in the preparation of the state budget to be presented to the legislature for its consideration at its regular sessions. It shall make such reports of its findings and recommendations with regard thereto to the legislature as it shall *163 deem advisable. The committee shall have any other duties and responsibilities provided or requested by law."[2]
In this suit the plaintiff contends that the authority of the governor to appoint twenty-four of the twenty-eight members of this "legislative" committee, as provided in R.S. 39:311(A), violates the Appointments Clause, La.Const. Art. IV § 5(H), and the Separation of Powers article, La.Const. Art. II §§ 1 and 2, of the Louisiana Constitution.[3]
I. The Appointments Clause
Plaintiff contends that the Legislative Budget Committee solely performs legislative functions and that since the "appointments clause" of the Louisiana Constitution limits the governor's power of appointment to the appointment of heads of departments or members of commissions in the executive branch of government, he is precluded from appointing members to this "legislative" committee. The appointments clause is contained in Article IV § 5(H) of the Constitution and provides:
"(1) The governor shall appoint, subject to confirmation by the Senate, the head of each department in the executive branch whose election or appointment is not provided by this constitution and the members of each board and commission in the executive branch whose election or appointment is not provided by this constitution or by law.
"(2) Should the legislature be in regular session, the governor shall submit for confirmation by the Senate the name of an appointee within forty-eight hours after the appointment is made. Failure of the Senate to confirm the appointment, prior to the end of the session, shall constitute rejection.
"(3) If the legislature is not in regular session, the governor may make interim appointments, which shall expire at the *164 end of the next regular session, unless submitted to and confirmed by the Senate during that session.
"(4) A person not confirmed by the Senate shall not be appointed to the same office during any recess of the legislature."
Plaintiff relies upon the recent United States Supreme Court decision of Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). In Buckley the United States Supreme Court construed the federal Constitution's appointments clause (Art. II § 2, cl. 2) to limit the power to appoint officers exercising executive functions to the President. That case does not support plaintiff's position. The federal article[4] differs from our constitutional provision and was utilized in Buckley to prohibit the legislative body from appointing officials to serve on a commission. The court found that members of the Federal Election Commission (granted by statute both rule-making, policy-making, investigative and enforcement power) could not constitutionally be appointed by the legislature, but were officers whose appointment was controlled by Art. II § 2, cl. 2 of the United States Constitution. The separation of powers question in the Buckley case was not whether the executive could appoint legislators to a "commission," but whether the legislature could name executive officers to enforce its laws.[5]
Plaintiff's argument that the appointments clause limits the governor to appointing only officials exercising executive powers is based upon a misconception of the nature of our state Constitution. The federal Constitution is a document of "enumerated powers" (Amendment X, U.S. Const.). The Louisiana Constitution is different. Complete legislative power, except as limited by the Constitution, lies within the state legislature:
"A general principle of judicial interpretation of a state constitution is that, unlike the federal constitution, a state charter's provisions are not grants of power, they are rather limitations on the power of the people exercised through the state legislature. In its exercise of the entire legislative power of the state, the legislature may enact any legislation that the state constitution does not prohibit. Thus, to hold legislation invalid under the state constitution, it is necessary to rely upon some particular constitutional provision that limits the power of the legislature to enact the statute assailed." In re Gulf Oxygen Welder's Supply Profit Sharing Plan and Trust Agreement, 297 So.2d 663, 665 (La.1974).
See also Hainkel v. Henry, 313 So.2d 577 (La.1975); Kane v. Louisiana Commission on Governmental Ethics, 250 La. 855, 199 So.2d 900 (1967).
Involved in this case is the legislative power to grant the governor the right to appoint a number of legislators to serve on the budget committee. Art. IV § 5(H) cannot be construed to mean that the governor can appoint to these and only these executive offices. The section does not provide that the governor may appoint executive *165 officials; nor does it prohibit other appointments by the governor. In fact, Art. IV § 5(K) of the Louisiana Constitution provides that the governor "shall have other powers and perform other duties authorized by this constitution or provided by law." Under R.S. 39:311 the governor merely appoints legislators, already duly elected, to serve on a committee whose function is to aid in the cooperation between the legislative and executive branches on matters pertaining to the state budget. Since the appointments clause does not operate to restrict the legislative power to enact R.S. 39:311(A), and does not limit the power of the executive to appoint, it does not affect the constitutionality of R.S. 39:311 unless there is a violation of the separation of powers doctrine.
II. The Separation of Powers Article
The Separation of Powers (distribution of powers) article of the Constitution provides:
"Section 1. The powers of government of the state are divided into three separate branches: legislative, executive, and judicial.
"Section 2. Except as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others." La.Const. 1974, Art. II §§ 1 and 2.
As the plain language of section 2 indicates, this provision of the Constitution is violated only if one branch of government or its members exercises power belonging to either of the others. The plaintiff alleges that the clause is violated because the governor is exercising legislative authority by appointing twenty-four of twenty-eight members of this "legislative" committee. This argument is without merit. The committee was established and exists as a result of a statute enacted by the legislature. All of the members of the committee are legislators. The legislature determined the method of selection and authorized the governor to appoint twentyfour members of the committee from its own number.
The legislative power is the power to make laws. As stated in Springer v. Government of Philippine Islands, 277 U.S. 189, 202, 48 S.Ct. 480, 482, 72 L.Ed. 845, 849 (1928): "Legislative power, as distinguished from executive power, is the authority to make laws, but not to enforce them or appoint the agents charged with the duty of such enforcement. The latter are executive functions."
In the federal system it is clear that the legislature may not appoint officers to enforce its laws (Buckley v. Valeo, supra; Springer v. Philippine Islands, supra; see Guidry v. Roberts, 335 So.2d 438 (La.1976)), because it would invade the exclusive realm of the executive. In the case before us, does the appointment of legislators by the governor invade the exclusive realm of the legislature? We think not. The exercise of such power of appointment does not make laws, nor does it so influence the law-making process that there is an indirect invasion of the legislative process.
The Legislative Budget Committee in the exercise of its duties (R.S. 39:312) gathers information about the fiscal affairs of the state, works with the executive in the preparation of the state budget (which the governor must prepare and submit to the legislature pursuant to Art. VII § 11, La.Const. 1974 and R.S. 39:41) and makes such reports and recommendations to the legislature as the committee determines. The members serve for a term of four years. R.S. 39:311.
The preparation and submission to the legislature of fiscal legislation and budgetary planning are not exclusive functions of either the legislature or the executive in Louisiana. The executive must prepare (Art. VII § 11, La.Const.1974) but only the legislature can enact the appropriations bill.
It could not have been contemplated that the doctrine of separation of powers should prevent a cooperative effort by the executive and legislative branches in fiscal planning for the state.
Since we find no violation of the appointments clause or the separation of powers doctrine, the judgment of the district court is affirmed.
*166 DENNIS, J., concurs in the result and assigns reasons.
SUMMERS, J., dissents and assigns reasons.
SUMMERS, Justice (dissenting).
The majority holds that because the Legislative Budget Committee "works with the executive in the preparation of the state budget" and "makes such reports and recommendations to the legislature as the committee determines," the Committee is not exercising the legislative power to make laws, nor does the Governor's appointment power "so influence the law-making process that there is an indirect invasion of the legislative process."
In essence, the Court views the Legislative Budget Committee as a mere advisory body to the Governor and the Legislature. If this were true, then the selection of the Committee's members by the Governor would probably not be violative of the separation of powers doctrine enshrined in Louisiana's Constitution. However, this is not the case.
The Committee is, to the contrary, a very powerful committee sitting as an interim fiscal legislature when the Legislature is not in session. Each general appropriations bill and the capital budget outlay programs authorize the Committee to exercise discretionary powers to rewrite and modify those acts. Thus the Committee may: 1) approve all transfers of funds from one category to another; 2) approve the expenditure of unforeseen or increased federal grant monies and self-generated revenues; 3) approve the transfer of appropriations when the functions of a state agency are transferred to another agency or agencies; 4) monitor all state expenditures to assure that receipts of the Treasury do not fall short of expenditures; 5) approve all salary increases in excess of five percent; 6) approve an annual aggregate increase in excess of 25 employees for any agency; and 7) approve the use of interest earned by idle capital funds for the purpose of completing capital projects.
Obviously the Legislature cannot foresee all fiscal exigencies which may arise when it is not in session. Therefore, while it is not in session, it has granted its basic and most fundamental legislative power, the power to appropriate, to the Committee. The appointment by the Governor of 24 of the 28 members of that committee is therefore a delegation of legislative authority to the executive.
This delegation of legislative authority to the executive cannot be sanctioned on the theory of cooperation between these branches of the government. The doctrine of separation of powers directs otherwise: "[N]o one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others." La.Const. art. II, § 2 (1974). The opportunity to cooperate today is an opportunity to abuse and corrupt tomorrow.
It is the disregard of this fundamental doctrine of checks and balances which is at stake here. It has been expressed eloquently in Humphrey's Executors v. United States, 295 U.S. 602, 55 S.Ct. 869, 79 L.Ed. 1611 (1934):
"The fundamental necessity of maintaining each of the three general departments of government entirely free from the control or coercive influence, direct or indirect, of either of the others, has often been stressed and is hardly open to serious question. So much is implied in the very fact of the separation of the powers of these departments by the Constitution; and in the rule which recognizes their essential coequality. The sound application of a principle that makes one master in his own house precludes him from imposing his control in the house of another who is master there. James Wilson, one of the framers of the Constitution and a former justice of this court, said that the independence of each department required that its proceedings `should be free from the remotest influence, direct or indirect, of either of the other two powers.' Andrews, The Works of James Wilson (1896), vol. 1, p. 367. And Mr. Justice Story in the first volume of his work on *167 the Constitution, 4th ed., § 530, citing No. 48 of the Federalist, said that neither of the departments in reference to each other `ought to possess, directly or indirectly, an overruling influence in the administration of their respective powers.'"
Under the majority's faulty reading of the separation of powers doctrine in Louisiana's Constitution, the Legislature may just as well relinquish to the Governor the power to name the members of its standing committees and their chairmen. While this example may seem extreme and all would recognize it as a patent surrender of legislative powers, the appointment of members of the Committee by the governor is a far more potent surrender of legislative powers affecting as it does the appropriation of funds.
I would hold this legislative surrender of authority to the executive unconstitutional.
DENNIS, Justice, concurring in the result only.
I agree that the district court was correct in dismissing the suit of the attorney general but not for the reasons expressed in the majority opinion.
In Stoddard v. City of New Orleans, 246 La. 417, 165 So.2d 9 (1964) we held that the courts are without power to render advisory opinions on abstract questions and that a justiciable controversy is essential to the exercise of the power to render declaratory judgments.
This Court, in Louisiana Independent Auto Dealers Association v. State, 295 So.2d 796 (La.1974), quoted with approval as requisites for finding a justiciable controversy the following:
"`Not only must the plaintiff prove his tangible interest in obtaining a judgment, but the action must be adversary in character, that is, there must be a controversy between the plaintiff and a defendant, subject to the court's jurisdiction, having an interest in opposing his claim. Unless the parties have such conflicting interests, the case is likely to be characterized as one for an advisory opinion, and the controversy as academic, a mere difference of opinion or disagreement not involving their legal relations, and hence not justiciable.' Borchard, Declaratory Judgments, p. 30 (2d Ed. 1941)."
An examination of the pleadings, briefs, attachments, and the entire record in this case fails to disclose that the attorney general has any tangible interest in obtaining the judgment he seeks or any real interest in opposing the committee's existence or exercise of authority under the legislation in question. Nor does there appear to be any actual conflict of interest between the parties so that our decision of the question posed by the attorney general will affect their legal relations.
Accordingly, it is clear that any decision rendered in this proceeding could amount to nothing more than an advisory opinion. In my view the case should have been dismissed without adjudication of the abstract question raised. For these reasons I concur in the affirmance of the dismissal of plaintiff's suit but cannot subscribe to the reasons for judgment below or in this Court.
NOTES
[1] Subsequently, the suit was dismissed as to the individual members of the committee and in its present posture the only defendant in the lawsuit is the Legislative Budget Committee.
[2] The remainder of the enabling legislation for the Legislative Budget Committee appears in R.S. 39:313-16 as follows:

"§ 313. The committee shall have the power and authority to hold hearings, subpoena witnesses, administer oaths, require the production of books and records and to do all other things necessary to accomplish the purposes of this Part, including the power to punish for contempt and to provide for the prosecution in accordance with the laws of this state of any individual who refuses to testify or who is charged with false swearing or perjury before the committee. The committee shall have such other powers and authority as are provided by law or the general appropriations or capital outlay bills."
"§ 314. The committee shall have the authority to employ professional, clerical, and other necessary personnel; to set the compensation of the officers and employees necessary for carrying out the provisions of this part and any mandates of the legislature and governor."
"§ 315. The division of administration, legislative fiscal office, office of the governor, legislative council, legislative auditor's office and all of the agencies, boards, commissions and departments of the state and of any of its political subdivisions are hereby directed to assist the committee in its work and to furnish such information, reports, aid, services and assistance as may be requested, all without any cost or charge of any nature to the committee."
"§ 316. A. The committee shall submit its recommendations to the governor and to each member of the legislature on the first of April of each year.
"B. The governor shall submit his budgetary recommendations to the committee three weeks prior to each regular session of the legislature and the governor shall submit the executive budget for which provision is made in R.S. 39:43 to the legislature on the first day of each regular session of the legislature."
[3] Defendant filed in the district court and seriously urges before us that the plaintiff is without a right or cause of action: that he seeks an advisory opinion; that his obligation is other than attacking the constitutionality of statutes; that there is no case or controversy before the court (see In re Gulf Oxygen, infra).

Because it seemed to us that the existence of the suit affected important governmental functions, and because the decision in the district court almost coincided with the scheduled meetings of the Legislative Budget Committee, we decided that it was more important to remove any uncertainty resulting from the suit by deciding the merits and pretermitting decisions on preliminary exceptions, as serious and important as they may be. Fully recognizing the want of logic in this procedure, the majority was of the opinion that since only slight ingenuity is required to pose the same issues with "real" parties with "standing" in a justiciable controversy, the state could be better served by answers to the basic questions of the suit than by answers to the "threshold" question.
[4] Article II § 2, cl. 2 of the United States Constitution provides:

"He [the President] shall have Power, by and with the Advice and Consent of the Senate, to make Treaties, provided two thirds of the Senators present concur; and he shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments."
[5] The principle of Buckley v. Valeo would invalidate a statute creating a committee to perform functions exclusively executive when the legislature named the members of the committee. Here, R.S. 39:311 names four legislators as ex-officio members of the committee. The Attorney General, however, does not attack the statute for this reason. R.S. 39:311, by the terms of Act 538 of 1976, will be ineffective after March 10, 1980, when a new section, R.S. 24:651, becomes effective, providing for a joint legislative committee on the budget, composed of the House Appropriations Committee and the Senate Finance Committee.