STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-317


MITCH DAVID BOURQUE

VERSUS

TOMAS DRAKE, ET AL.

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 70380
HONORABLE JOHN E. CONERY, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and James T. Genovese, Judges.

AFFIRMED.

James D. "Buddy" Caldwell
Attorney General
Terry Ford Hessick
Assistant Attorney General
P. O. Box 94005, Cap. Station
Baton Rouge, LA 70804-9005
Counsel for Defendant/Appellee:
 State of Louisiana

Joseph R. Joy, III
Gordon J. Schoeffler
Joseph Joy & Assoc.
P. O. Box 4929
Lafayette, LA 70502
Counsel for Plaintiff/Appellant:
 Mitch David Bourque

**Lloyd Frederick Schroeder  II**
**Craig E. Frosch**
**Usry, Weeks, & Matthews, APLC**
**1615 Poydras, Ste 1250**
**New Orleans, LA 70112**
**Counsel for Defendant/Appellees:**
   **Ronny Theriot, Sheriff and**
   **Warden Helen Wiltz**

**PICKETT, J.**

The plaintiff, Mitch David Bourque, appeals a judgment of the trial court sustaining exceptions of prescription filed by the defendants, Ronny Theriot, Sheriff of St. Martin Parish and Helen Wilt, who was Warden of the St. Martin Parish Correctional Center at the time at issue. We affirm the judgment of the trial court.

## FACTS

The plaintiff, Mitch D. Bourque, was incarcerated in the St. Martin Parish Correctional Center (hereinafter referred to as "the jail") on or about November 15, 2004. Sometime thereafter, the plaintiff was placed in a two-man cell with the defendant, Tomas Drake, an illegal alien who was being held for federal authorities. Drake was much larger in size than Bourque who weighed approximately 118 pounds. On approximately ten occasions in January 2005, after lights out, Drake raped Bourque and threatened him with death or severe physical harm if he informed anyone of the attacks. Other inmates noticed a marked change in Bourque's behavior and notified the guards who moved Bourque to another cell on January 25, 2005. Thereafter, Bourque was interviewed by Warden Wiltz, and, after being assured of his future safety, Bourque finally reported on January 29, 2005, what had taken place.

The plaintiff filed the instant action on March 16, 2006, seeking damages for injuries sustained as a result of the attacks. The defendants, Ronny Theriot, Sheriff of St. Martin Parish, and Helen Wilt, the former Warden of the St. Martin Parish Correctional Center, filed exceptions of prescription which were sustained by the trial court. The plaintiff appeals.

1

## LAW AND ARGUMENT

In *Petry v. Hebert*, 06-1447, pp. 1-2 (La.App. 3 Cir. 5/2/07), 957 So.2d 286, 288, a panel of this court stated:

> Ordinarily, when dealing with prescription, the burden of proof is on the party pleading prescription; however, when the plaintiff's petition has clearly prescribed on its face, as it has here, the burden shifts to the plaintiff to prove that prescription has been suspended or interrupted. *Younger v. Marshall Ind., Inc.*, 618 So.2d 866 (La.1993). Delictual actions are subject to a prescriptive period of one year commencing from the date that the injury or damage is sustained. La.Civ.Code art. 3492.

In the case sub judice, the plaintiff's petition sounds in tort. The petition was not filed until more than one year after the date of the alleged incidents. Thus, the petition is prescribed on its face, and the burden is on the plaintiff to prove an interruption of the one year prescriptive period provided by La.Civ.Code art. 3492.

Between the time of the alleged attacks on the plaintiff and the filing of the case herein, Hurricanes Katrina and Rita struck the state disrupting the everyday course of life for a majority of people within the state. In response to the catastrophic damage and the disruption resulting therefrom, then Governor Blanco issued a number of Executive Orders (KBB 2005-32, 48 and 67) which suspended and/or extended all prescriptive periods during the recovery period following the storms. The plaintiff argues that, as a result of these executive orders, the prescriptive period governing his claim was suspended or interrupted for a period of 89 days, or until April 24, 2006. Further, the plaintiff argues that the trial court erred in finding La.R.S. 9:5822 constitutional in that the statute divested him of substantive rights previously vested. The trial court disagreed with the plaintiff's argument and so do we.

2

In *Unwired Telecom Corp. v. Parish of Calcasieu*, 03-732, pp. 14-15 (La.

1/19/05), 903 So.2d 392, 403-04, the supreme court explained:

> The state's governmental powers are divided into three separate branches: legislative, executive, and judicial. LA. CONST. ANN. art. II, § 1. None of these branches, or anyone holding office in one of them, shall exercise power belonging to either of the others. LA. CONST. ANN. art. II,§ 2.

> In Louisiana, legislation is the superior source of law which custom cannot abrogate. LA. CIV.CODE ANN. art. 1, comments (a) and (c). As authorized in LA. CONST. ANN. art. III, § 1, the legislative power of the state is vested in the Legislature. In the exercise of legislative power, the Legislature may enact any legislation that the state constitution does not prohibit. *Board of Com'rs of Orleans Levee Dist. v. Dept. of Natural Resources*, 496 So.2d 281, 286 (La.1986). Therefore, the Legislature is free, within constitutional confines, to give its enactments retroactive effect. *St. Paul Fire & Marine Ins. Co. v. Smith*, 609 So.2d 809, 816 (La.1992).

> LA. CIV.CODE ANN. art. 6 provides:

> > In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.

> In a like manner, LA.REV.STAT. ANN. § 1:2 provides:

> > No section of the Revised Statutes is retroactive unless it is expressly so stated.

> Although LA.REV.STAT. ANN. § 1:2 does not distinguish between substantive, procedural and interpretive laws, Louisiana jurisprudence has consistently treated it and LA. CIV.CODE ANN. art. 6 as co-extensive. *Bourgeois v. A.P. Green Indus., Inc.*, 00-1528 (La.4/3/01), 783 So.2d 1251, 1256, n6.

> In *Cole v. Celotex Corp.*, 599 So.2d 1058 (La.1992), we interpreted these two provisions as requiring a two-fold inquiry:

> > First, we must ascertain whether in the enactment the legislature expressed its intent regarding retrospective or prospective application. If the legislature did so, our inquiry is at an end. If the legislature did not, we must

3

classify the enactment as substantive, procedural or interpretive.

*Cole*, 599 So.2d at 1063.

Notwithstanding, even when the Legislature has expressed its intent to give a substantive law retroactive effect, the law many not be applied retroactively if it would impair contractual obligations or disturb vested rights. *Smith v. Board of Trustees of Louisiana State Employees' Retirement System*, 02-2161 (La.6/27/03), 851 So.2d 1100. In a like vein, interpretative legislation may also not be applied retroactively if the legislative change violates the principles of separation of powers and independence of the judiciary. *See, infra*.

Following Hurricanes Katrina and Rita, the First Extraordinary Session of the legislature was convened on November 6, 2005. Acts 2005, 1st Ex.Sess., No. 6, § 1 enacted Chapter 1, "Of Obligations During Certain Emergencies and Disasters," of Code Title III of Code Book III of Title 9 of the Revised Statutes of 1950, comprised of La.R.S. 9:2551 to 2565, effective November 23, 2005. Louisiana Revised Statutes 9:5821 states (emphasis ours):

A. The legislature finds that Hurricanes Katrina and Rita created a statewide emergency disrupting and forcing the closure of certain courts and public offices and further resulting in the displacement of courts, offices, clients, and counsel. This Chapter is enacted for the benefit and protection of the state as a whole and its citizens, and to prevent injustice, inequity, and undue hardship to persons who were prevented by these hurricanes from timely access to courts and offices in the exercise of their legal rights, including the filing of documents and pleadings as authorized or required by law. Therefore, this Chapter shall be liberally construed to effect its purposes.

B. The action of the governor of this state in issuing Executive Orders KBB 2005-32, 48, and 67 is hereby approved, ratified, and confirmed *subject to the provisions of R.S. 9:5822 through 5825.*

Additionally, La. R.S. 9:5822(A) states the following (emphasis ours):

*All prescriptions*, including liberative, acquisitive, and the prescription of nonuse, *and all peremptive periods shall be subject to a limited suspension and/or extension during the time period of August 26, 2005, through January 3, 2006*; *however, the suspension and/or extension of these periods shall be limited and <u>shall apply only if these</u>*

4

*periods would have otherwise lapsed during the time period of August 26, 2005, through January 3, 2006. This limited suspension and/or extension shall terminate on January 3, 2006, and any right, claim, or action which would have expired during the time period of August 26, 2005, through January 3, 2006, shall lapse on January 4, 2006.*

In *New Orleans Firefighters Ass'n. v. Civil Service Commission of the City of New Orleans*, 422 So.2d 402, 406 (La.1982), our supreme court reminded us of the following:

> The legislative power of the state is vested in the Legislature. La.Const. 1974, Art. 3 § 1. Except as expressly provided by the constitution, no other branch of government, nor any person holding office in one of them, may exercise the legislative power. *Id.* Art. II §§ 1 and 2. Furthermore, it is a general principle of judicial interpretation of a state constitution that, unlike the federal constitution, a state charter's provisions are not grants of power but instead are limitations on the otherwise plenary power of the people of a state exercised through its legislature. In its exercise of the entire legislative power of the state, the legislature may enact any legislation that the state constitution does not prohibit. Thus, to hold legislation invalid under the state constitution, it is necessary to rely upon some particular constitutional provision that limits the power of the legislature to enact the statute appealed. *State ex rel Guste v. Legislative Budget Committee*, 347 So.2d 160 (La.1977); *Hainkel v. Henry*, 313 So.2d 577 (La.1975); *In re Gulf Oxygen Welder's Supply Profit Sharing Plan*, 297 So.2d 663 (La.1974). See also, *State v. Mallery*, 364 So.2d 1283, 1284 (La.1978) ("Except as limited by the constitution its power is plenary"); *Swift v. State*, 342 So.2d 191, 194 (La.1977) ("Unlike Congress, our State Legislature has all powers of legislation not specifically denied it by the Louisiana constitution").

The ratification of the governor's executive order by the legislature was not a blanket ratification, but rather the suspension and/or extension of the prescriptive and/or peremptive periods, and was limited by the legislature only to those periods would have lapsed during the time period of August 26, 2005, through January 3, 2006. Furthermore, the legislature provided that the " limited suspension and/or extension shall terminate on January 3, 2006, and any right, claim, or action which

5

would have expired during the time period of August 26, 2005, through January 3, 2006, shall lapse on January 4, 2006." La.R.S. 9:5822.

Had there been no hurricanes, the plaintiff's right to file his action would have terminated on January 25, 2006. The actions of the legislature in no way affected the plaintiff's rights—prescription of his claim did not fall during the time period of August 26, 2005, through January 3, 2006, and, in any event, the suspensions and/or extensions provided by the statutes lapsed on January 4, 2006, three weeks before prescription ran on the plaintiff's claim.

> The following is well settled:
>
> [The court] is required to decide a constitutional issue only "if the procedural posture of the case and the relief sought by the appellant demand that [it] do so." *Ring v. State, DOTD*, 2002-1367, pp. 6-7, 835 So.2d 423, 428. Further, a court should avoid constitutional questions whenever the case can be disposed of on non-constitutional grounds. *Id.* at 4, 835 So.2d at 427. One of the threshold non-constitutional issues that must be decided by a court before it may consider a constitutional challenge to a legal provision is whether the person challenging the provision has standing. *Id.* at 9, 835 So.2d at 429. *See also Church Point Wholesale Beverage Co., Inc. v. Tarver*, 614 So.2d 697 (La.1993). In order to have standing to challenge the constitutionality of a legal provision, the person bringing the challenge must have rights in controversy. *Id.* at 7, 835 So.2d at 428. More specifically, "[a] person can challenge the constitutionality of a statute only if the statute seriously affects his or her rights." *Latour v. State*, 2000-1176, p. 560 (La.App.1/29/01), 778 so.2d 557, 560, citing *Louisiana Paddlewheels v. Louisiana Riverboat Gaming Commission*, 94-2015 (La.11/30/94), 646 So.2d 885.

*State v. Mercadel*, 03-3015, pp. 7-8 (La. 5/25/04), 874 So.2d 829, 834.

Accordingly, we find that (1) the legislature had the power to pass any law it deemed fit,; (2) the statutes passed by the legislature in no way adversely affected the rights of the plaintiff; and (3) since the plaintiff's rights were not seriously affected, the plaintiff is without standing to challenge the constitutionally of the statutes at issue.

6

In sum, the plaintiff failed to prove that prescription of his cause of action had been suspended or interrupted, and he has no standing to challenge the constitutionally of the statutes at issue.

Accordingly, for the reasons stated, the judgment of the trial court is affirmed. All costs of appeal are assessed against the plaintiff, Mitch D. Bourque.

**AFFIRMED.**