Dear Representative Odinet:
This office is in receipt of your letter requesting an Attorney General's Opinion regarding the authority of the Secretary of the Department of Wildlife and Fisheries over expenditures of the Seafood Promotion and Marketing Board on behalf of the Oyster Task Force.
Act 448 of the 1995 Regular Session of the Louisiana Legislature enacted R.S. 56:10(B)(1)(a), establishing the "Oyster Development Account", a special account in the Seafood Promotion and Marketing Fund. The Oyster Development Account is funded by a five-cent (5¢) fee for each oyster tag sold pursuant to R.S.56:449. R.S. 56:10(B)(1)(a) further provides that expenditures from this account are administered jointly by the Louisiana Seafood Promotion and Marketing Board and the Louisiana Oyster Task Force. Act 448 also enacted R.S. 56:578.12 which provides:
 Under the supervision of the Louisiana Oyster Task Force, the Louisiana Seafood Promotion and Marketing Board shall be empowered with the following duties, responsibilities, and functions:
(1) To employ such personnel as necessary.
 (2) To develop markets and marketing strategies for the development of new and expanded markets for Louisiana oysters.
 (3) To represent the interest of the Louisiana oyster industry before federal and state administrative and legislative bodies on issues of importance to the Louisiana oyster industry.
 (4) To contract for legal services to represent the interests of the Louisiana oyster industry in judicial, administrative, and legislative proceedings.
 (5) To administer the funds in the Oyster Development Account of the Seafood Promotion and Marketing Fund.
 (6) To perform any acts deemed necessary and proper to carry out and their duties and responsibilities.
Thus, the Seafood Promotion and Marketing Board acts under the supervision of the Oyster Task Force in carrying out the duties provided for in R.S. 56:578.12.
In the following year, the 1996 Regular Session of the Louisiana Legislature passed House Concurrent Resolution No. 6 which provides for a sixteen member task force to coordinate efforts to increase oyster production and salability, seek and receive assistance from the universities within the state to increase production and marketability of molluscan shellfish, and conduct meetings to study the decline in molluscan shellfish salability, degradation of water quality which could adversely affect consumer health, the reasons for such decline in salability and degradation in water quality, and to make recommendations with respect to a resolution of the problems associated with the molluscan shellfish industry in the state. HCR 6 also provides that the Seafood Promotion and Marketing Board, under the supervision of the Oyster Task Force, shall be "empowered with the duties, responsibilities, and functions as provided in Act No. 448." While not specifically stated, it is apparent the task force created by HCR 6 is the Oyster Task Force.
Pursuant to R.S. 56:578.7, funds from the Seafood Promotion and Marketing Fund, including the Oyster Development Account, can only be withdrawn from the Treasury on warrant of the Secretary of the Department of Wildlife and Fisheries. According to your letter, the secretary has notified the Seafood Promotion and Marketing Board that the Board must receive prior written approval of the secretary before obligating any funds of the Oyster Development Account. You ask whether the secretary has the authority to require such approval.
The Louisiana Seafood Promotion and Marketing Board was placed within the Department of Wildlife and Fisheries pursuant to R.S.36:610(E). R.S. 36:802.5 provides:
 The agencies placed in the Department of Wildlife and Fisheries by R.S. 36:610(E) shall exercise and carry out all powers, duties, functions, and responsibilities as provided by R.S. 36:802, except that each agency shall hire its own director and assistant director, subject to the approval of the secretary of the Department of Wildlife and Fisheries.
R.S. 36:802 provides that such agencies:
 . . . shall continue to be composed and selected as provided by law, and each shall continue to exercise all of the powers, duties, functions, and responsibilities provided or authorized for each by the constitution or laws which are in the nature of policy making, rule making, licensing, regulation, enforcement, or adjudication and also shall continue to exercise all advisory powers, duties, functions, and responsibilities provided by law. Such powers, duties, functions, and responsibilities shall be exercised independently of the Secretary and any assistant secretary, except that:
 (1)(a) The Secretary of the department to which each is transferred shall exercise all powers, duties, functions, and responsibilities necessary for the administration and implementation of the policies, rules, and decisions of the agency so transferred, including the employing, appointing, removing, and promoting of necessary personnel.
Normally, such "802 agencies" retain policy making powers with the secretary responsible for implementing those policies. We have opined in the past that the secretary of the department in which the 802 agency is located may require written notification of all proposed expenditures of funds, but may not require secretarial approval for such expenditures. La. Atty. Gen. Op. 77-519. We have also opined that approval is required in some instances because of the secretary's responsibility to administer and implement policies established by the agency. La. Atty. Gen. Op. 87-673. Based on the fact the secretary draws the funds from the Treasury and has the responsibility to implement the policies of the agency, we believe the secretary does not have absolute discretion, but does have more than a ministerial duty to draw funds from the Treasury for expenditures to implement policies of 802 agencies.
The present situation is not a normal section 802 agency issue. While the Seafood Promotion and Marketing Board is an 802 agency, in the present instance it is acting under the direct supervision of the Oyster Task Force, an agency created by concurrent resolution and not by the normal introduction of a bill and passage through the formalities set forth in the constitution. The Seafood Promotion and Marketing Board is acting as a conduit through which the Oyster Task Force is attempting to carry out the duties, responsibilities, and functions provided in R.S.56:578.12, authority granted to the Task Force by HCR 6.
The Louisiana Constitution provides for concurrent resolutions only to suspend laws under Art. III, § 20 and for proposing constitutional amendments under Art. XIV, § 1. HCR 6 does not propose a constitutional amendment, nor does it suspend a law. The thrust of HCR 6 is to study the decline in molluscan shellfish salability and the degradation of water quality and make recommendations with respect to resolution of associated problems. The Oyster Task Force appears to be a type of legislative committee, charged with the task of studying one particular issue and providing recommendations. These types of task forces have regularly been created in the past by the legislature.[1]
The legislature is vested with the power to enact laws. La. Const. Art. III. The executive branch is vested with the power to execute laws. La. Const. Art. IV. The separation of powers doctrine is found in Article II of the Louisiana Constitution:
 Section 1. The powers of the government of the state are divided into three separate branches: legislative, executive, and judicial.
 Section 2. Except as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others.
The separation of powers article is violated if one branch of government or its members exercises power belonging to either of the others. State v. Legislative Budget Committee,347 So.2d 160 (La. 1977). HCR 6 is not a statute. The Oyster Task Force was created and can be modified or terminated solely by the will of the legislature. The legislature has full control over the Oyster Task Force and therefore can be deemed to be performing the executive functions granted to the task force, i.e. those laws found in R.S. 56:578.12. It is the opinion of this office that HCR 6 did not create an executive agency and the Oyster Task Force therefore can not carry out the executive functions, duties, and responsibilities found in R.S. 56:578.12
without violating the separation of powers doctrine of the Louisiana Constitution.
Even if the Oyster Task Force can be considered an executive agency, the result would be the same. The Louisiana Supreme Court has ruled that the legislature appointing members to an executive agency, in and of itself, does not violate the separation of powers doctrine. The test the court established is whether the appointees are subject to such significant legislative control that the Legislature can be deemed to be performing executive functions through its control of the members in the executive branch. State Board of Elected Officials v. Green,566 So.2d 623 (1990). Green concerned a board created by statute to enforce certain laws. The Supreme Court found that in this case there was no violation of the separation of powers doctrine:
 [The statute] which provides the method of appointment of the members of the Board of Ethics for Elected Officials . . . contains significant restraints on legislative control over the actions of the Board. The members of the Board are appointed for staggered six-year terms and can be removed only for cause. Legislators, employees of the Legislature, and other public servants cannot be appointed. The Board's staff members are classified civil servants. Thus, there is no continuing relationship between the Legislature and the appointees which extends the Legislature's control over the appointees in any significant degree beyond the original appointment.
Green, 566 So.2d at 626.
Unlike Green, six members of the Oyster Task Force are members of the legislature and there are no set or staggered terms. It is the opinion of this office that the legislature's control over the task force members is such that the legislature would be deemed to be performing executive functions through its control of the members of the Oyster Task Force. This would also violate the separation of powers doctrine.
Based on the above, it is the opinion of this office that the Oyster Task Force can not carry out the duties, responsibilities, and functions under R.S. 56:578.12 and the secretary of the Department of Wildlife and Fisheries is not required to draw funds from the Treasury for use by the Oyster Task Force for those purposes.
We trust the foregoing has been helpful. Should you have any further questions, please contact this office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ___________________________ FREDERICK C. WHITROCK Assistant Attorney General
RPI/FCW/tp
[1] For example, SCR 28 of the 1984 Regular Session created the Task Force on Shrimp Management. SCR 68 of the 1985 Regular Session created the Louisiana Narcotics Trafficking Research Commission. SCR 24 of the 1985 Regular Session created the Louisiana Bicentennial Commission. HCR 180 of the 1989 Regular Session created the Finfish Limited Entry Task Force. SCR 176 of the 1991 Regular Session created the Public Bid Law Study Commission. HCR 74 of the 1994 Regular Session created the Committee on Implementation of Americans With Disabilities Act. SCR 149 of the 1995 Regular Session created the Compulsive Gambling Study Committee. SCR 18 of the 1996 Regular Session created the Indigent Defender Committee. Like HCR 6, almost all such committees and task forces are directed to study problems and issues within their named areas and make recommendations to the legislature. Almost all have House and Senate members as committee members, as does HCR 6.